**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

RICHARD ALLEN,                                )
                                             )
        Plaintiff,                            )
                                             )
    vs.                                       )        Case No. 4:23-cv-00639-MTS
                                             )
SEMI TRUCKING, LLC, *et al.*,                 )
                                             )
        Defendants.                           )

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants Semi Trucking, LLC and German

Perez Travieso's Motion for Partial Summary Judgment.  Doc. [120]; *see also* Fed. R.

Civ. P. 56(a).  Defendants seek judgment in their favor on Plaintiff Richard Allen's

demand for punitive damages and on his negligence and negligence per se claims against

Defendant Semi Trucking, LLC.  After review and consideration of the parties' filings,

the Court will grant the Motion as described herein.

## I.      Legal Standard

Federal Rule of Civil Procedure 56 requires federal district courts to grant a

party's motion for summary judgment if the party "shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a).  As the Supreme Court has explained, the main purpose of the summary

judgment procedure "is to isolate and dispose of factually unsupported claims or

defenses," with due regard being given to the rights of those opposing a claim or defense

to demonstrate in the manner provided by Rule 56, prior to trial, that a claim or defense

has no factual basis. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986); *accord Bedford v. Doe*, 880 F.3d 993, 996 (8th Cir. 2018). After all, if a nonmoving party cannot assemble sufficient evidence to make out its claim, there is no genuine issue of material fact for a jury to resolve. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Celotex*, 477 U.S. at 331 (Brennan, J., dissenting); *see also* Charles E. Clark, *The Summary Judgment*, 36 Minn. L. Rev. 567, 578 (1952) (explaining that a trial should not be "forced upon a litigant by one with no case at all").

On a motion for summary judgment, the movant bears the initial responsibility of informing the district court of the basis for its motion and must identify the portions of the record that it believes demonstrate the absence of a genuine dispute of material fact. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc); *Bedford*, 880 F.3d at 996. Since the burden of persuasion at trial in this case would be on Plaintiff—the nonmoving party here—Defendants may satisfy Rule 56's burden of production in one of two ways. Defendants may either produce evidence negating an essential element of Plaintiff's case, or they may show that Plaintiff does not have enough evidence of an essential element of his claims to carry his ultimate burden of persuasion at trial. *Bedford*, 880 F.3d at 996. Put differently, if Plaintiff must prove $X$ to prevail, then Defendants may either present evidence demonstrating that $X$ cannot be established or point to the record showing that Plaintiff lacks evidence from which a reasonable jury could find $X$. *Id.*; *see also Celotex*, 477 U.S. at 325 (making clear that "the burden on the moving party may be discharged by 'showing'—that is, pointing out

- 2 -

to the district court—that there is an absence of evidence to support the nonmoving party's case").[1]

The "initial burden on the movant is 'far from stringent' and 'regularly discharged with ease.'" *Bedford*, 880 F.3d at 996 (quoting *St. Jude Med., Inc. v. Lifecare Int'l, Inc.*, 250 F.3d 587, 596 (8th Cir. 2001)).  Once Defendants have satisfied it, Plaintiff "must respond by submitting evidentiary materials" of specific facts showing the existence of a genuine issue for trial.  *Id.* (quoting *Torgerson*, 643 F.3d at 1042).  Plaintiff's response must do more than raise some abstract doubt about the material facts, *id.*, and he cannot rest on mere denials or allegations, *Gibson v. American Greetings Corp.*, 670 F.3d 844, 853 (8th Cir. 2012).  Plaintiff must instead present enough evidence that a jury could reasonably find in his favor.  *Id.*; *Bedford*, 880 F.3d at 996.

Accordingly, the Court must determine whether Defendants have satisfied their initial burden and, if so, whether Plaintiff sufficiently responded.  In doing so, the Court will view the evidence and draw reasonable inferences in the light most favorable to Plaintiff, since he is the nonmoving party here.  *Ryno v. City of Waynesville*, 58 F.4th 995, 1004 (8th Cir. 2023) ("Summary judgment is proper if, after viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmovant, no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law."); *Scott v. Harris*, 550 U.S. 372, 378 (2007) (explaining that when the parties'

---

[1] A movant cannot discharge its summary judgment burden merely by asserting that the nonmoving party lacks evidence; rather, the movant must identify materials in the record demonstrating that the nonmoving party cannot establish an essential element of its claim. *See Handeen v. Lemaire*, 112 F.3d 1339, 1346–47 (8th Cir. 1997); *Celotex*, 477 U.S. at 328 (White, J., concurring).

version of events differ, "courts are required to view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion" (internal quotations and alterations omitted)).

## II.    Background

Defendant Semi Trucking, LLC ("Semi Trucking") was a motor carrier that employed Defendant German Perez Travieso as a driver.  *See* 49 C.F.R. § 390.5.  As a motor carrier, Semi Trucking was required to comply with applicable regulations promulgated by the Federal Motor Carrier Safety Administration, a federal agency within the Department of Transportation.  On August 31, 2021, while working in the course and scope of his employment with Semi Trucking, Defendant Travieso was driving a 2014 Volvo VNL tractor-trailer northbound on U.S. Highway 61 in Missouri.  While in Lincoln County, Defendant Travieso experienced an "emergency" that required him to pull over to the right-hand shoulder of the divided four-lane highway, where he parked his tractor-trailer for about eight to ten minutes.[2]  While parked, Defendant Travieso did not place bidirectional reflective triangles outside the tractor-trailer.  *See* 49 C.F.R. § 392.22(b).

---

[2] Plaintiff purports to dispute that there was an emergency, arguing that "Travieso *testified* that he had an emergency" but that "[t]here is no evidence" of one.  Doc. [124] at ¶ 18.  But testimony *is* evidence.  *Testimony*, *Black's Law Dictionary* (12th ed. 2024) ("Evidence that a competent witness under oath or affirmation gives at trial or in an affidavit or deposition."); *Evidence*, *Black's Law Dictionary* (12th ed. 2024) (noting evidence "include[s] testimony"); *see also* Fed. R. Evid. 602.  Given that uncorroborated testimony of a single witness can be sufficient to sustain a criminal conviction beyond a reasonable doubt, *United States v. Dodge*, 538 F.2d 770, 783 (8th Cir. 1976), it necessarily follows that testimony may establish a material fact for purposes of summary judgment in a civil action.

- 4 -

Around that same time, Plaintiff Richard Allen was driving a GMC Sierra pickup truck northbound in the right-hand lane of U.S. Highway 61.  Plaintiff admits that he saw Defendants' stopped tractor-trailer on the right-hand shoulder with its left blinker on, but the parties dispute the timing and sequence of what happened next.  At some point, the tractor-trailer reentered the right-hand lane of the divided highway, and the rear of the tractor-trailer and the front of Plaintiff's pickup truck collided, causing substantial injuries to Plaintiff.

At the time of the collision, Defendant Semi Trucking did not have a company policy manual.  Nor did Defendant Travieso speak virtually any English.  *See* 49 C.F.R. § 391.111(b)(2).  After the collision, Defendant Semi Trucking did not conduct a post-crash drug and alcohol test of Defendant Travieso, *see id.* at § 382.303, though the police officer responding to the collision did not observe any indication that Travieso was intoxicated.  And discovery revealed that Defendant Semi Trucking failed to maintain Travieso's complete application for employment and did not have a proper driver qualification file on him.  *See id.* at § 391.51.

*

Plaintiff's operative pleading, his Third Amended Complaint, purports to bring three counts.  Doc. [111] at 5–11.  While Plaintiff's pleading did not need to include a perfect statement of his legal theories, *see In re SuperValu, Inc.*, 870 F.3d 763, 772 (8th Cir. 2017) (quoting *Johnson v. City of Shelby*, 574 U.S. 10, 12 (2014)), his legal theories are not well delineated.  *See generally* Doc. [111].  Instead, his pleading repeatedly

incorporates prior allegations[3] and otherwise intermingles distinct theories of liability, making it unclear whether Plaintiff seeks to impose liability based on vicarious liability, direct negligence, negligence per se, or some combination of those theories.

Count One is labeled "negligence against Defendant Semi Trucking." *Id.* at 5 (capitalization altered). Much of this count alleges that Semi Trucking is vicariously liable for Travieso's conduct immediately preceding the collision. *See, e.g.*, *id.* ¶ 39(a), (e) (stating Semi Trucking "operated the tractor trailer in a careless manner" by "failing to keep a careful lookout" and "failing to properly merge from a highway shoulder"). But Count One also includes statements asserting Semi Trucking's own direct negligence. *See, e.g.*, *id.* ¶ 39(h) (stating Semi Trucking "operated the tractor trailer in a careless manner" by "failing to properly supervise and train Mr. Perez Travieso").

Count Two is labeled "negligence and negligence per se against Defendant Semi Trucking." *Id.* at 7 (capitalization altered). To start, Plaintiff muddies the water by incorporating every previous paragraph of the pleading—including Count One—into Count Two. *See supra* n.3. Count Two then seems to focus on Semi Trucking's direct negligence, including allegations concerning hiring, training, supervision, and retention of Defendant Travieso. *See, e.g.*, Doc. [111] ¶ 48(a)–(e). It also identifies numerous

---

[3] Plaintiff chose the shotgun-pleading style of having "multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1321 (11th Cir. 2015). Even standing alone, this approach can be a "confusing" one. *See* 5A *Wright & Miller's Federal Practice & Procedure* § 1326 (4th ed. 2026).

federal regulations that Plaintiff maintains Semi Trucking violated, *id.* ¶ 48(f)–(*l*), and concludes with a request for "an award of punitive damages," *id.* ¶ 53.

Lastly, Count Three is labeled "negligence and negligence per se against Defendant German Perez Travieso." *Id.* at 9 (capitalization altered). Like Count Two, Plaintiff incorporates his previous counts into Count Three. Count Three then focuses largely on Defendant Travieso's actions and inactions immediately preceding the collision. *See, e.g.*, Doc. [111] ¶ 57(a)–(f). Count Three also lists federal regulations that Plaintiff maintains Defendant Travieso violated, *id.* ¶ 57(e)–(g), and, as with Count Two, it concludes with a request for "an award of punitive damages," *id.* ¶ 65.

Defendants Travieso and Semi Trucking seek partial summary judgment in their favor on two areas. *See* Fed. R. Civ. P. 56(a) (noting a party may seek summary judgment on a "claim or defense" or "part of" any claim or defense). Specifically, they seek summary judgment on Plaintiff's claims for punitive damages against them. And, since Defendants admit an agency relationship existed between them, they seek summary judgment in their favor on Plaintiff's direct-negligence claims against Defendant Semi Trucking in Count Two and those similar direct-negligence claims against it that Plaintiff "stuffed" throughout the Third Amended Complaint. Doc. [120] 2–3; *see also McHaffie ex rel. McHaffie v. Bunch*, 891 S.W.2d 822, 826 (Mo. banc 1995) (adopting the view that "once an employer has admitted *respondeat superior* liability for a driver's negligence, it is improper to allow a plaintiff to proceed against the employer on any other theory of imputed liability").

## III.   Discussion

The punitive-damages issue is intertwined with the propriety of Plaintiff's direct-negligence claims against Defendant Semi Trucking.  Accordingly, the key question is whether, based on the undisputed facts, a reasonable jury could find a basis for awarding punitive damages.  Because the answer to that question is "no," the Court will grant Defendants' Motion.

\*

Punitive damages are "rarely recoverable in negligence actions," *Rhoden v. Mo. Delta Med. Ctr.*, 621 S.W.3d 469, 486 (Mo. banc 2021) (Powell, J., joined by Russell, J., concurring), because "negligence, a mere omission of the duty to exercise care, is the antithesis of willful or intentional conduct," *Blanks v. Fluor Corp.*, 450 S.W.3d 308, 401 (Mo. Ct. App. 2014) (quoting *Hoover's Dairy, Inc. v. Mid-America Dairymen, Inc./Special Products, Inc.*, 700 S.W.2d 426, 435 (Mo. banc 1985)).  The common law of numerous jurisdictions recognizes this principle.  *See, e.g.*, *Swift Transportation Co. of Ariz. L.L.C. v. Carman ex rel. Cnty. of Yavapai*, 515 P.3d 685, 693 (Ariz. 2022); *Lafarge N. Am., Inc. v. Nord*, 86 So. 3d 326, 335 (Ala. 2011); *Brown v. Maxey*, 369 N.W.2d 677, 681 (Wis. 1985).  Under Missouri law, punitive damages may be awarded for a negligent act or omission when a defendant's conduct showed complete indifference to or conscious disregard for the safety of others.  *Schultz v. Great Plains Trucking, Inc.*, 707 S.W.3d 570, 580 (Mo. banc 2025); *see also* Mo. Approved Jury Instr. (Civil) 10.02 (8th ed.).

- 8 -

That standard is difficult for plaintiffs to establish in negligence cases arising from vehicle collisions.  For example, this Court recently explained that evidence of excessive speed in inclement weather, without more, did not establish the deliberate and flagrant disregard for the safety of others required to support punitive damages.  *See James v. Moore*, 1:23-cv-0115-SNLJ, 2025 WL 506546, at *4 (E.D. Mo. Feb. 14, 2025) (Limbaugh, J.).  It is the "truly extraordinary" negligence case that calls for punitive damages, *see Rhoden*, 621 S.W.3d at 486 (Powell, J., concurring), and mere "excessive speed in inclement conditions," while negligent, cannot, without more, be called truly extraordinary, *see James*, 2025 WL 506546, at *4.[4]

While *James* provides a good example of when punitive damages are not appropriate as a matter of law, *Schultz v. Great Plains Trucking, Inc.* provides one where they can be appropriate, where the level of the defendant's complete indifference or conscious disregard warrants submission of punitive damages.  707 S.W.3d at 570.  In *Schultz*, the Supreme Court of Missouri affirmed a punitive-damages award that the trial court submitted to the jury.  *Id.* at 580.  The evidence there showed a highly experienced commercial truck driver, who knew the specific roadway well and was familiar with the Missouri Commercial Driver's License ("CDL") safety requirements, failed to reduce his speed despite approaching a known blind curve on wet pavement.  *Id.*  Instead, he

---

[4] Empirical evidence shows the exceptional nature of punitive damages awards in motor vehicle tort cases.  In a nationwide study of nearly 3,000 state-court motor vehicle tort trials, plaintiffs sought punitive damages in only 3.3% of cases.  Theodore Eisenberg et al., *The Decision to Award Punitive Damages: An Empirical Study*, 2 J. Legal Analysis 577, 586 (2010).  Of that already narrow subset of cases in which plaintiffs even requested punitive damages, they were awarded only in 20.3% of cases plaintiffs won.  *Id.*

exceeded the posted speed limit, even though he acknowledged that the CDL Manual required slower speeds on curves, slower speeds in limited visibility, and slower speeds during reduced traction.  He also admitted that he knew that violating those rules could cause serious injury or even death.  *Id.*  The plaintiffs' experts testified that the driver's conduct was extraordinarily dangerous and that, had the driver complied with the CDL Manual—or even simply driven the posted speed limit—the collision would not have happened, and the decedent would not have died.  *Id.*

The evidence against the employer in *Schultz* was equally troubling, showing that the employer ratified the driver's conduct.  *Id.* at 581.  The company leader maintained that the driver's speed was acceptable, and the company endorsed an unwritten policy allowing drivers to exceed speed limits by some degree in *all* circumstances.  *Id.*  A company leader even insisted in testimony that he would have done the same thing as the driver.  *Id.*  To that end, the company took no corrective action and provided no additional training after the fatal crash.  *Id.*  Together, the evidence was sufficient for the jury to conclude that both the driver and employer acted with conscious disregard for the safety of others.  *Id.* at 580–81.

Other jurisdictions likewise distinguish between ordinary negligence in motor vehicle collisions and the type of aggravated misconduct that justifies punitive damages. Kentucky courts, for example, have recognized that "[n]early all auto accidents are the result of negligent conduct," and that "few are sufficiently reckless" as to warrant punitive damages.  *Kinney v. Butcher*, 131 S.W.3d 357, 359 (Ky. Ct. App. 2004).  Thus, in *Kinney*, the court found that traveling "ten miles per hour in excess of the posted speed

limit and failing to complete a pass before entering a no-passing zone" was not sufficiently reckless to warrant punitive damages. *Id.*  In *Gersh v. Bowman*, the court "wholly agree[d]" with *Kinney*'s premise but found that the defendant's conduct at issue there was sufficiently reckless.  239 S.W.3d 567, 572 (Ky. Ct. App. 2007).  There, immediately prior to the collision, the driver was traveling at least twenty-four miles per hour over the posted speed limit, at night, with two passengers, and failed to slow down on a sharp curve though one of the passengers even warned of the approaching curve.

With the guideposts of *James* and *Schultz* in mind, along with the straightforward nature of the difference between negligence and the complete indifference to or conscious disregard for the safety of others, the Court looks to the undisputed facts of this case.  In resisting summary judgment, Plaintiff argues that punitive damages are appropriate here because of Defendants' "numerous" violations of federal regulations.  Doc. [123] at 8; *see also* Doc. [124] at 10–16 (focusing almost exclusively on the alleged regulatory violations).  Federal regulations are extensive; they govern activities across nearly every sector of modern life.  *See* Neil Gorsuch & Janie Nitze, *Over Ruled: The Human Toll of Too Much Law* 17 (2024) (noting that, in 2021, there were about 200 volumes of the Code of Federal Regulations containing over 188,000 pages).  Plaintiff points to several of the many regulations promulgated by the Federal Motor Carrier Safety Administration, regulations that he argues Defendants transgressed.  Upon review, none of the regulations Plaintiff identifies, however, make punitive damages appropriate under Missouri law and the undisputed facts of this case.  Plaintiff's arguments miss the mark—sometimes by

mischaracterizing the undisputed facts, sometimes by misapplying the law, and sometimes by doing both.

Start with 49 C.F.R. § 392.22(b)(1), which provides that, generally, "whenever a commercial motor vehicle is stopped upon the traveled portion or the shoulder of a highway for any cause other than necessary traffic stops, the driver shall, as soon as possible, but in any event within 10 minutes, place [required] warning devices." Plaintiff seizes on this regulation because Defendant Travieso admits that he did not place warning triangles outside of his stopped vehicle. *See* Doc. [124] at 10. It is undisputed, however, that Defendant Travieso was parked "for a period of only eight to ten minutes." *Id.* ¶ 19. Accordingly, his inaction regarding warning devices did not necessarily violate § 392.22(b)(1). *Compare Reid v. Midwest Transp.*, 607 S.E.2d 170, 175 (Ga. Ct. App. 2004), *with Regions Bank v. White*, 4:06-cv-1475-JLH, 2009 WL 3148732, at *7–8 (E.D. Ark. Sept. 24, 2009). Even assuming his failure to place warning devices outside his truck during his short emergency stop on the shoulder violated § 392.22(b)(1), Plaintiff has failed to show "how [the] placement of these triangles would in any way have made any difference in these events." *See Reid*, 607 S.E.2d at 175.

The collision occurred while Defendant Travieso was reentering or had already reentered the divided highway from the shoulder. Had he placed warning triangles while his tractor-trailer was stopped, he would have removed them to merge back into traffic. Thus, Defendant Travieso's failure to place warning triangles had *no* causal connection to the accident whatsoever. *See Regions Bank*, 2009 WL 3148732, at *8 (denying summary judgment where jury could conclude that "the absence of warning devices was a

- 12 -

proximate cause of the collision"). The mere fact that Defendant Travieso's compliance with this regulation would have altered the timing or location of his return to the highway does not establish that the violation caused the collision in any legal sense. *Contra* Doc. [123] at 12 ("[B]y the time that Travieso would have finished picking up all the reflective warning triangles behind his tractor-trailer, the Plaintiff would have already safely drove [sic] past Travieso's commercial vehicle while it was still stopped on the shoulder of the highway, and the subject crash would not have occurred."). If Plaintiff's outlandish argument were correct, any unlawful act that changes someone's location or timing would create liability for every subsequent accident that otherwise would not have occurred. It does not. *See Tharp v. St. Luke's Surgicenter-Lee's Summit, LLC*, 587 S.W.3d 647, 657 (Mo. banc 2019) (explaining that a "proximate cause requirement ensures events that are 'too far removed from the ultimate injury or damage' do not provide a basis for liability even if they are causal in fact").

There likewise is a causation problem with Plaintiff's argument under 49 C.F.R. § 391.111(b)(2). That provision requires drivers to be able to "read and speak the English language sufficiently to converse with the general public, to understand highway traffic signs and signals in the English language, to respond to official inquiries, and to make entries on reports and records." *Id.* As the regulation itself details, this requirement is based on common sense. No one wants to drive on roads with people operating vehicles who cannot understand traffic signs. Since it is undisputed that Defendant Travieso speaks virtually no English, Defendants plainly violated § 391.111(b)(2). Nevertheless, this case is not one where, for example, a driver barreled

past a sign that read: "Wrong Way – Do Not Enter."  Defendant Travieso's unfamiliarity with the English language did not contribute to the collision.  Indeed, there is not even a "suggestion" in this case that Defendant Travieso's lack of English fluency "had any bearing on the accident."  *See Smith v. Caravan Logistics, Inc.*, 4:24-cv-0267-SRW, 2025 WL 2689180, at *5 (E.D. Mo. Sept. 19, 2025).

Nor did Semi Trucking's failure to maintain Travieso's employment application or driver qualification file have any causal connection to the collision.  In the first place, Plaintiff admits that Defendant Travieso "had an active CDL at the time of this accident," and that "there is no indication" Defendant Travieso's CDL "has ever been revoked." Doc. [124] ¶ 12.  What is more, Defendants have pointed to evidence in the record showing that Defendant Travieso provided a license equivalent to a road test to Semi Trucking upon hiring.  Doc. [122] ¶ 11; *see also* 49 C.F.R. § 391.33(a).  Plaintiff purports to dispute this fact.  Doc. [124] ¶ 11.  But Plaintiff points only to evidence that shows Semi Trucking failed to preserve a copy of the license in its files, *see id.* at § 391.33(b), not that Semi Trucking failed to check or collect it.  While Defendants may well have violated the regulation by failing to retain a legible copy of the license in Defendant Travieso's qualification file, Plaintiff has not at all explained how that caused or contributed to Plaintiff's injuries.

In the end, Plaintiff has produced a lot of smoke but no fire.  Out of the many regulations applicable, Plaintiff has pointed to none that the Defendants both violated and that contributed, in any way, to the collision.  But with punitive damages, "[a] defendant should be punished for the conduct that harmed the plaintiff, not for being an unsavory

- 14 -

individual or business." *Stogsdill v. Healthmark Partners, L.L.C.*, 377 F.3d 827, 832 (8th Cir. 2004) (quoting *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 423 (2003)).  Plaintiff cannot seek to punish Defendants for failing to follow regulations that have no causal relationship to his injuries.  Though Plaintiff's alleged injuries are serious, this case involves a routine vehicle collision and presents typical negligence claims.  It is far from one of those "truly extraordinary" negligence cases that could warrant punitive damages.  *See Rhoden*, 621 S.W.3d at 486 (Powell, J., concurring).

Finally, because Defendants are entitled to summary judgment on Plaintiff's claims for punitive damages, Defendant Semi Trucking is entitled to summary judgment on Plaintiff's direct-negligence claims against it.  All parties agree that Defendant Travieso was driving as an agent and employee of Semi Trucking and was acting in the scope of his agency and employment at the time the collision took place.  As such, it would be "improper" to allow Plaintiff to proceed against Defendant Semi Trucking "on any other theory of imputed liability."  *McHaffie*, 891 S.W.2d at 826.  If a punitive-damages exception to *McHaffie*'s rule exists, *see* Brent Powell, *Submitting Theories of* Respondeat Superior *and Negligent Entrustment/Hiring*, 61 Mo. L. Rev. 155, 165–68 (1996) (noting *McHaffie*'s holding reserved "a 'possible' exception" where punitive damages are sought); *Bell v. Redjal*, 569 S.W.3d 70, 81 (Mo. Ct. App. 2019) (opining that *McHaffie*'s "rule is subject to an exception when the plaintiff brings a claim for punitive damages against the employer" (citing *Wilson v. Image Flooring, LLC*, 400 S.W.3d 386, 391–92 (Mo. Ct. App. 2013))), it would not apply here given the Court's earlier conclusion regarding punitive damages.

- 15 -

## IV.     Conclusion

As to Plaintiff's demand for punitive damages, Defendants have shown that there is no genuine dispute as to any material fact and that they are entitled to judgment as a matter of law.  With that, they have also shown that they are entitled to judgment as a matter of law on all Plaintiff's direct-negligence theories against Defendant Semi Trucking.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants Semi Trucking, LLC and German Perez Travieso's Motion for Partial Summary Judgment, Doc. [120], is **GRANTED**.

Dated this 28th day of July 2026.

MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE